UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

FRANK RIVERA,

                    Plaintiff,

        -vs-                          **No. 1:14-CV-00816 (MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

─────────────────────────────

## I.   Introduction

        Represented by counsel, Frank Rivera ("plaintiff") brings this
action pursuant to Title XVI of the Social Security Act ("the
Act"), seeking review of the final decision of the Commissioner of
Social Security ("the Commissioner") denying his application for
supplemental security income ("SSI"). The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g). Presently before
the Court are the parties' cross-motions for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure. For the reasons discussed below, the Commissioner's
motion is granted.

## II. Procedural History

        The record reveals that in May 2011, plaintiff (d/o/b
September 3, 1963) applied for disability insurance benefits
("DIB")[1] and SSI, alleging disability as of January 1, 1980 due to
a back injury, post-traumatic stress disorder ("PTSD"), anxiety,

─────────────────

        [1] Plaintiff's Title II claim was dismissed at the hearing, at
plaintiff's request.

and depression. After his applications were denied, plaintiff requested a hearing, which was held before administrative law judge Stanley A. Moskal, Jr. ("the ALJ") on November 14, 2012. The ALJ issued an unfavorable decision on February 14, 2013. The Appeals Council denied review of that decision and this timely action followed.

III. **The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 1980, the alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: depression; anxiety; history of substance abuse; status post motor vehicle accident of September 16, 2011 with herniated and bulging discs of the cervical, thoracic, and lumbar spine, knee injury, and shoulder injury; hepatitis C; asthma; and obesity.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 416.967(b), and could: occasionally lift 20 pounds;

frequently lift 10 pounds; stand, sit, and/or walk for six hours in an eight-hour workday; occasionally push and pull 20 pounds; frequently push and pull 10 pounds; perform postural activities with occasional limitations; never work on ropes, ladders, or scaffolds; and must avoid concentrated exposure to fumes and hazards. Because plaintiff had no past relevant work, the ALJ proceeded to step five and determined that, considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ relied on the Medical-Vocational Guidelines ("the grids"), specifically rule 202.17, in determining that plaintiff was not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that (1) the ALJ improperly weighed the medical opinions; (2) the ALJ improperly evaluated an "other source" opinion; (3) the ALJ failed to consider plaintiff's

depression to be a severe impairment; and (4) the ALJ failed to properly assess plaintiff's credibility.

## A.    Weight Given to Medical Opinions

Plaintiff points to four treating medical source opinions, from Drs. Cameron Huckell, William Capicotto, Jon Kucera, and Mikhail Strut, and argues that the ALJ improperly substituted his own medical judgment for that of these physicians. The Court notes that, as the Commissioner points out, the opinions from Drs. Huckell and Capicotto simply state that plaintiff was "disabled," and do not detail any functional limitations underlying the assessments. Specifically, Dr. Huckell's November 2011 treatment note stated that plaintiff was "temporarily disabled in regards to the left knee." T. 322. This injury was secondary to an September 2011 incident in which plaintiff was struck by a car while bicycling. In February 2012, plaintiff underwent arthroscopic knee surgery, and at the hearing he reported that post-surgery his knee was "better" and that he had limitations only on "days that are damp and . . . walking up the stairs." T. 49. Dr. Capicotto stated, in connection with an April 2012 exam, that plaintiff had a "total" and "temporary" disability that would last for a period of 12 weeks from that date, and more specifically, that it was "highly unlikely that he [would] be able to return to his job as a mechanic." T. 363, 365.

First, the opinions of Drs. Huckell and Capicotto do not indicate that plaintiff suffered from a permanent disability within the meaning of the Social Security Act. See 42 U.S.C. § 1382c(a)(3)(A). Second, these opinions are not functional assessments but merely reflect an opinion on an issue of plaintiff's disability status, which is an issue reserved to the Commissioner. See 20 C.F.R. § 916.927(d) ("Opinions on some issues [such as an opinion that a claimant is disabled under 20 C.F.R. § 916.927(d)(1)] are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."). As a result, these opinions were not entitled to controlling weight under the treating physician rule. See Earl-Buck v. Barnhart, 414 F. Supp. 2d 288, 293 (W.D.N.Y. 2006) ("A treating source's statement that plaintiff 'is totally disabled,' . . . is not considered a 'medical opinion' under the treating physician's rule to which controlling weight should be assigned because it represents an opinion on an issue reserved to the Commissioner.").

Similarly, Dr. Strut's opinion does not contain any meaningful assessment of plaintiff's functional limitations, except to the extent that it checked boxes indicating no limitations in mental functioning. Dr. Strut's assessment, filled out in June 2012, indicated that plaintiff was "permanently totally disabled" due to

low back pain. T. 391. As noted above, this opinion in itself is not entitled to weight, as it regards an issue reserved to the Commissioner. With regard to physical limitations, Dr. Strut placed a vertical line through check boxes applicable to lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, using hands, and stairs or other climbing. The line itself spans the boxes for "no evidence of limitations" and "moderately limited" with regard to these functions. Nowhere on the form does Dr. Strut indicate the level of plaintiff's limitations as to any physical functions. The Court therefore determines that this was not a treating medical source statement entitled to controlling weight, because the only opinion actually conveyed in the form was that plaintiff was "permanently totally disabled."

Dr. Kucera's opinion, on the other hand, does contain some assessment of plaintiff's physical functional limitations. Dr. Kucera found, in July 2012, that plaintiff was "moderately" limited in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, and climbing. T. 393. Dr. Kucera commented that plaintiff was "unable to work due to inability to sit, stand, walk, lift." Id. He also indicated that this condition was expected to last at least 12 months. The ALJ considered this opinion but did not give it controlling weight, "because it was a check-off box questionnaire of the claimant's limitations," it was based on plaintiff's subjective complaints of pain which the ALJ found to be

6

incredible, and Dr. Kucera's objective findings contained within treatment notes did not support the opinion. T. 32.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

Substantial evidence supports the ALJ's decision to accord less than controlling weight to Dr. Kucera's findings of moderate physical limitations. Generally, although the evidence does show that plaintiff complained of pain and had limitations in range of motion, the more restrictive findings in the record were close to the date of plaintiff's September 2011 bicycling accident. Much of the treatment records in evidence relate to plaintiff's treatment for injuries resulting from that accident, which injuries showed improvement over time through the summer of 2012. Plaintiff's knee injury improved after surgery, as described above, and the record

indicates that in November 2011, after receiving an injection for pain related to a shoulder injury sustained in the accident, treating physician Dr. Marc Tetro was hopeful that the injection would provide lasting treatment and recommended follow-up physical therapy. Physical therapy notes, in turn, indicate that from September 2011 through June 2012, although he consistently reported pain, plaintiff showed slow but steady improvement.

Also, as the ALJ noted, Dr. Kucera's March 2012 physical examination was essentially normal, with plaintiff demonstrating normal sensory, bulk and contours, and tone; 5/5 normal muscle strength; and normal coordination. In April 2012, Dr. Capicotto reviewed March 2012 MRIs of the cervical and lumbar spine, which showed cervical disc herniation with myelopathy, but concluded that they "showed no indication for surgical intervention." T. 363. Also in April 2012, plaintiff treated with Dr. Strut, who continued intr-ligamentous injections, which plaintiff reported were working to lessen his pain.

Because Dr. Kucera's own treatment notes, as well as notes from other treating sources, contain substantial evidence of objective findings inconsistent with the limitations found by Dr. Kucera in his July 2012 opinion, the ALJ was entitled to give that opinion less than controlling weight. Perhaps more significantly, Dr. Kucera's assessment of "moderate" limitations in physical functioning is arguably consistent with the ALJ's finding

that plaintiff could perform light work, and is certainly consistent with a conclusion that he could perform a full range of sedentary work. Even assuming (without finding) that it was error for the ALJ to conclude that plaintiff could indeed perform light work, that error would be harmless because the finding encompasses the ability to perform sedentary work. See, e.g., Reams v. Astrue, 2010 WL 1270172, *3 (E.D.N.Y. Mar. 31, 2010) (citing Roman v. Barnhart, 477 F. Supp. 2d 587, 599 (S.D.N.Y. 2007) (holding that even where "ALJ was incorrect when he found that plaintiff had the residual functional capacity to do light work, SSI benefits would still be denied [where plaintiff] had the capacity to do sedentary work.")).

## B.   Weight Given to "Other Source" Opinion

Plaintiff contends that the ALJ erred in giving no weight to the opinion of nurse practitioner Gerald Friscaro, who provided a statement as to plaintiff's mental functional limitations. While the Court agrees that the ALJ should have ascribed NP Frisicaro's opinion *some* weight, for the reasons discussed below, the Court finds that this error was harmless.

NP Frisicaro submitted a "mental functional limitation evaluation," dated February 8, 2012, in which he checked boxes indicating that plaintiff could perform the following functions "30-59% of the time": following work rules; interacting appropriately with co-workers, the public, and supervisors; dealing

with work stresses; responding appropriately to changes in a routine work setting; functioning independently; maintaining attention and concentration; using judgment; understanding, remembering, and carrying out simple job instructions; maintaining personal appearance; behaving in an emotionally stable manner; relating predictably in social situations; and demonstrating reliability. T. 352-53. NP Frisicaro also indicated that plaintiff could perform the following functions "less than 30% of the time": understanding, remembering, and carrying out complex job instructions, and understanding, remembering, and carrying out detailed, but not complex job instructions. T. 353. NP Frisicaro responded that plaintiff's psychological symptoms would be "exacerbate[d]" by a "routine, repetitive, entry-level job," and that he had a medically/psychologically determinable impairment which could reasonably be expected to produce his symptomology. T. 354. According to NP Frisicaro, plaintiff had a "long history of academic, cognitive, [and] social deficits." Id.

Although there is evidence in the record that plaintiff carried a diagnosis of depression and intermittently displayed psychiatric symptoms, there is also ample evidence in the record, in multiple treatment notes, reflecting normal mental status examinations. Additionally, none of plaintiff's treating physicians reported that he had limitations in mental functioning; in fact, both Drs. Kucera and Strut specifically indicated that he had no

limitations in any areas of mental functioning, with the exception of Dr. Kucera's note that plaintiff was "moderately" limited in functioning in a work setting at a consistent pace. T. 393. Dr. Kucera's findings regarding plaintiff's mental functioning are especially informative given the fact that Dr. Kucera had treated plaintiff for depression in the two months leading up to his July 2012 report. Moreover, NP Frisicaro is an "other source" under the regulations, and as such, his opinion is not entitled to controlling weight. See Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).

Considering the substantial record evidence indicating that plaintiff's mental condition did not cause significant functional limitations, the  ALJ's assignment of no weight to NP Frisicaro's opinion was not reversible error. See Brown v. Colvin, 2014 WL 1679761, *5 (W.D.N.Y. Apr. 28, 2014) ("While the ALJ should have considered and given *[some] weight* to the nurse practitioner's opinion, plaintiff fails to show harmful error in this disregard.") (emphasis added).

## C.   Consideration of Mental Impairments

Plaintiff contends that the ALJ erred in failing to find his depression to be a severe impairment. However, the ALJ's decision states, in an explicit finding, that the ALJ considered plaintiff's diagnoses of depression and anxiety to be severe impairments under the regulations. In the discussion below that finding, the ALJ then

stated that plaintiff's "mental impairments of anxiety and depression, considered singly and in combination, [did] not cause more than minimal limitation in the [plaintiff's] ability to perform basic mental work activities and [were] therefore non-severe." T. 24. Despite this statement, the ALJ's discussion indicates that he fully considered the paragraphs A, B, and C criteria of the regulations when determining plaintiff's level of mental functioning and its potential effect on his RFC. See T. 5-26. The ALJ did not, however, find that plaintiff's mental impairments rose to a level that they would impact his work performance, and therefore, the ALJ did not incorporate mental limitations into the RFC finding.

The ALJ's decision regarding plaintiff's mental functioning is supported by substantial evidence. As discussed above, although there is evidence in the record that plaintiff was diagnosed with depression and anxiety and that he did receive some treatment for those conditions, his own treating physician, Dr. Kucera, opined that he had no limitations in mental functioning even after recently treating plaintiff for depression. Dr. Strut also opined that plaintiff had no limitations in mental functioning. Considering this substantial evidence, the ALJ did not err in declining to incorporate mental functional limitations into his RFC assessment.

### D.   Credibility

Plaintiff contends that the ALJ improperly evaluated plaintiff's credibility. The ALJ discussed plaintiff's credibility with reference to the two-step inquiry laid out in 20 C.F.R. § 416.929. Contrary to plaintiff's contention, the ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility (see Netter v. Astrue, 272 F. App'x 54, 56 (2d Cir. 2014)), and the ALJ was also entitled to consider plaintiff's own inconsistent statements regarding his substance abuse as undermining his overall credibility. See Harris v. Astrue, 2012 WL 995269, *2 (S.D.N.Y. Mar. 26, 2012) ("[W]hile the ALJ did not specifically refer to the factors, he pointed out numerous inconsistencies in Plaintiff's testimony that relate to each factor that led him to regard her as a non-credible witness. These inconsistencies provide substantial evidence supporting the ALJ's credibility determination.").

Moreover, the ALJ's decision, which incorporates his review of the testimony, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); see also Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25,

2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record.").

## V.   Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 7) is denied and the Commissioner's cross-motion (Doc. 10) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
            HON. MICHAEL A. TELESCA
            United States District Judge

Dated:     October 19, 2015
           Rochester, New York.